IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GARY STERN and SUSAN STERN,

    Plaintiffs,

v.                                  Civil Action No. 5:15CV98
                                            (STAMP)
COLUMBIA GAS TRANSMISSION, LLC,
CHESAPEAKE APPALACHIA, LLC,
COLUMBIA ENERGY VENTURE, LLC and
SWN PRODUCTION COMPANY, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

    This civil action arises out of two oil and gas leases. The plaintiffs allege that the defendants have pooled and unitized their properties without contractual authority and are unlawfully producing gas from their properties. The defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motions are granted in part and denied in part.

## I.  Facts

    Columbia Gas Transmission, LLC and Columbia Energy Venture, LLC (collectively "Columbia") hold oil and gas leases in the plaintiffs' two tracts ("the subject leases"). Columbia sublet the subject leases to Chesapeake Appalachia, LLC ("Chesapeake"). Chesapeake has since assigned all of its rights and interests in the subject leases to SWN Production Company, LLC ("SWN").

The plaintiffs ("the Sterns") allege that the subject leases do not allow for pooling or unitizing their properties with neighboring lands. The Sterns allege that Chesapeake proposed modifications to the subject leases that would allow for pooling, but that they refused the modifications. When the Sterns refused to modify the subject leases, Chesapeake's agent allegedly "threatened that Chesapeake would take [the Sterns'] gas with or without their agreement to modify the [subject] leases as he stormed out of [the Sterns'] home slamming the door behind him." ECF No. 76 at 6.

Chesapeake then filed a Declaration and Notice of Pooled Unit, stating that portions of the Sterns' properties were included in a pooled unit known as the "Ray Baker Unit." Chesapeake drilled and began operating a well known as the "Ray Baker #1H" on property, other than the Sterns', in the Ray Baker Unit. The Sterns allege that the Ray Baker #1H well is producing gas from the Sterns' properties through drainage. After Chesapeake assigned all of its rights and interests in the subject leases to SWN, SWN has continued producing gas from the Sterns' properties through the Ray Baker #1H well. The Sterns allege that after they filed this civil action, SWN issued a First Amended Declaration and Notice of Pooled Unit for the Ray Baker Unit, "reconfigur[ing] the boundaries of the Ray Baker Unit . . . to exclude the portion of [the Sterns'] . . .

2

tracts which had previously been included in the Unit by Chesapeake." ECF No. 76 at 8.

The Sterns' claims against Columbia have since been settled and dismissed. However, the Sterns continue to allege claims against both Chesapeake and SWN for breach of contract, breach of the implied covenant against drainage, fraudulent extraction of gas, trespass, conversion, bad faith pooling, and breach of the implied covenant of good faith and fair dealing. Chesapeake has now filed a motion to dismiss under Rule 12(b)(6). SWN filed a separate motion to dismiss under Rule 12(b)(6) and joined Chesapeake's memorandum in support of its motion to dismiss.

## II. Applicable Law

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff is plausibly entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III. <u>Discussion</u>

A. <u>Breach of Contract Claims - Count II</u>

In Count II, the Sterns allege claims for the breach of contract, breach of the implied covenant against drainage, and fraudulent extraction of gas. The defendants argue that these claims must be dismissed because the subject leases include a right to pool or unitize the Sterns' properties. The Sterns argue that the subject leases do not include express pooling clauses and are otherwise ambiguous regarding pooling rights.

Under West Virginia law, "[a]n oil and gas lease which is clear in its provisions and free from ambiguity, either latent or patent, should be considered on the basis of its express provisions and is not subject to a practical construction by the parties." <u>Flanagan v. Stalnaker</u>, 607 S.E.2d 765, 770 (W. Va. 2004) (internal quotation marks omitted). Similarly, the parol evidence rule applies to oil and gas leases that are completely integrated. <u>Warner v. Haught, Inc.</u>, 329 S.E.2d 88, 94 (W. Va. 1985). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." <u>Flanagan</u>, 607 S.E.2d at 769. "A latent ambiguity arises when the instrument upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain." <u>Flanagan</u>, 607 S.E.2d at 769 n.4. Where a term is ambiguous, the court may look to the course of the parties' performance to determine the parties' intent. <u>Harbert v.</u>

4

Hope Natural Gas Co., 84 S.E. 770, 773 (W. Va. 1915). Further, "oil and gas leases . . . will generally be liberally construed in favor of the lessor, and strictly as against the lessee." Flanagan, 607 S.E.2d at 770 (internal quotation marks omitted).

"Generally, future pooling clauses are definite, designating the maximum acreage that can be placed in a pooled unit and the mode of pooling, containing anti-dilution provisions, specifying the hydrocarbons subject to the pooling, limiting the period in which pooling can be exercised to avoid the rule against perpetuities, and requiring the recording of the declaration of pooling." 1A Nancy Saint-Paul, Summers Oil and Gas § 6:27 (3d Ed. 2015). Further, more general pooling clauses are valid where they "merely authoriz[e] unitization where it is in the best interests of the parties to do so and providing for the apportionment of royalties in the proportion that the area of the land covered by the lease bears to the entire unitized area." Id. Thus, valid future pooling provisions must provide an express right to pool or unitize, withstand the rule against perpetuities, and provide for apportionment of royalties between the pooled leases.

First, the express language of the subject leases permits pooling or unitization. The granting clause of each subject lease provides the defendants with "all other rights and privileges necessary, incident to, or convenient for the operation of the [Sterns' property], **alone and conjointly with other lands** for the

5

production and transportation of oil and gas, and for the injection, storage and withdrawal of gas." ECF No. 82-1 at 2, 6 (emphasis added). This language expressly contemplates the operation of the subject leases with other lands as a unit. Second, the grants survive the rule against perpetuities because the leases terminate after ten years unless the defendants operate the leases alone or conjointly with neighboring lands.[1] ECF No. 82-1 at 2, 6. Third, as discussed below, by operation of law the Sterns would be entitled to a one-eighth royalty in the proportion that the area of land covered by the subject leases bears to the whole unit. Thus, this Court finds that the subject leases expressly grant the defendants the right to pool or unitize the Sterns' properties.

The Sterns argue that pooling or unitization was not contemplated by the subject leases because the leases require the lessee to drill on the properties themselves to extend the lease

---

[1] Under West Virginia law,

[a] nonvested property interest is invalid unless:

(1) When the interest is created, it is certain to vest or terminate no later than twenty-one years after the death of an individual then alive; or

(2) The interest either vests or terminates within ninety years after its creation.

W. Va. Code § 36-1A-1(a).

term.  However, § 2 of each subject lease provides for an extension of the leases' primary terms if the Sterns' property

> or any portion thereof is operated by the [defendants], in search for or in production of oil or gas as long as such land is utilized by [the defendants] **alone or conjointly with neighboring lands** for either the storage of gas by injection, storage and removal of gas through well or wells operated on either the [Sterns' property] or other adjoining or neighboring lands comprising a part of the same gas storage field, or for the protection of any gas stored in such storage field.

ECF No. 82-1 at 2, 6 (emphasis added).  Thus, the terms of the subject leases are extended if the Sterns' properties are operated "alone or conjointly with neighboring lands."  This language contemplates the pooling or unitization with neighboring lands and extends the term of the Sterns' lease for any work done within a unit that includes the Sterns' properties.  Further, the repeated use of the phrase "alone or conjointly" in the granting clauses and in § 2 reinforces the parties' intent to grant pooling rights.

Next, the Sterns argue that the subject leases cannot be read to provide for pooling because they do not provide for royalty payments unless there is production on the properties themselves. While the subject leases do not expressly provide for the apportionment of royalties amongst pooled leases, "[a] present pooling clause in an oil and gas lease produces the same royalty apportionment effect as a community lease."  Saint-Paul, <u>supra</u> § 56:1.  Under West Virginia law, lessors in a community lease are entitled to royalties for oil or gas produced "in the proportion

7

that the parcel of land held by each of them bears to the total area of the tract." Lynch v. Davis, 92 S.E. 427, 429 (W. Va. 1917). Thus, by operation of law, the Sterns would be entitled to the royalty stated in the subject leases in proportion with the acreage of their land included in the unit.

Finally, the Sterns argue that Chesapeake and SWN's attempts to modify the leases to include pooling or unitization clauses show that the parties did not understand the leases to include such rights originally. The Sterns also argue that they obtained discovery showing that Chesapeake obtained modifications for other leases in the Ray Baker Unit that have substantially similar language and provisions as the Sterns' leases, allegedly showing that Chesapeake did not believe the Sterns' leases authorized pooling or unitization. However, because this Court finds the subject leases to be unambiguous, the parties' actions in performing the subject leases are irrelevant to their construction.

Because this Court finds that the subject leases provide the defendants with the right to pool or unitize the Sterns' properties, the defendants did not breach the subject leases by including the Sterns' properties in the Ray Baker Unit and by producing gas from those properties through the Ray Baker #1H well. Accordingly, the Sterns' claims for breach of contract, breach of the implied covenant against drainage, and fraudulent extraction of gas in Count II must be dismissed.

8

B.  <u>Bad Faith Pooling & Breach of Duty of Good Faith and Fair Dealing Claims - Counts V, VI, and VII</u>

The Sterns allege claims for "bad faith pooling" and "breach of the implied covenant of good faith and fair dealing" against Chesapeake and SWN separately. ECF No. 13, 15. Specifically, the Sterns allege that, in adding portions of their properties to the Ray Baker Unit, Chesapeake did not "act in good faith as a reasonabl[y] prudent operator and . . . take into account both its interests and those of the [Sterns]." ECF No. 76 at 13. Similarly, the Sterns allege that SWN's removal of their properties from the Ray Baker Unit breached its duty to act in good faith as a reasonable operator. They also allege that the defendants' "breach of contract, breach of the implied covenant against drainage, fraudulent extraction of gas . . . , trespass, and bad faith pooling ha[ve] been such as to constitute a breach of the implied covenant of good faith and fair dealing." ECF No. 76 at 15. The defendants argue that the Sterns' claims must be dismissed because West Virginia law does not permit stand-alone breach of implied covenant claims.

Under West Virginia law, breaches of implied covenants do not "provide a cause of action apart from a breach of contract claim." <u>Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP</u>, 746 S.E.2d 568, 578 (W. Va. 2013) (internal quotation marks omitted). Rather, such claims "sound[] in breach of contract." <u>Id.</u> (internal

9

quotation marks omitted). However, the Sterns' claims allege breaches of the subject leases for conduct unrelated to their claim that the subject leases do not provide pooling or unitization rights. They allege that Chesapeake failed to act as a reasonably operator in adding portions of the Sterns' properties to the Ray Baker Unit, that SWN did the same in removing the Stern's properties from the unit, and that both defendants' actions breached their duties to act in good faith. The breach of good faith and fair dealing claim relies on at least one version of facts that does not overlap with the dismissed claims in Count II, in that the Sterns allege that each defendants' act of bad faith pooling constitutes a breach of the defendants' duties to act in good faith and fair dealing. Thus, the Sterns' claims may survive despite the defendants having the right to pool or unitize the Sterns' properties. While the Sterns' claims are stated as breaches of implied covenants, they should properly be construed as breach of contract claims and need not be dismissed based on their style in the complaint. See Highmark W. Va., Inc. v. Jamie, 655 S.E.2d 509, 514 (W. Va. 2007) ("[W]hile inartfully drafted as a claim upon an implied covenant, Count 3 is, in reality, a breach of contract claim covering matters not identical to those specified in Counts 1 and 2."). Accordingly, the defendants' motions to dismiss are denied as to Counts V, VI, and VII.

10

C.   <u>Trespass and Conversion Claims – Counts III and IV</u>

The Sterns also allege claims for trespass and conversion of their gas. They allege that the defendants committed a physical trespass by drilling the Ray Baker #1H well and hydraulically fracturing the shale under the Ray Baker Unit, including the Sterns' properties, without contractual authority to do so. They also allege that the defendants have been producing gas from the Sterns' properties through that well without contractual authority to do so. The defendants argue that these claims are barred by the "gist of the action" doctrine and that the Sterns otherwise fail to state claims for trespass or conversion.

Under the gist of the action doctrine, a plaintiff cannot maintain a tort claim in a breach of contract case where: (1) "liability arises solely from the contractual relationship between the parties"; (2) "the alleged duties breached were grounded in the contract itself"; (3) "any liability stems from the contract"; and (4) "the tort claim essentially duplicates the breach of contract claim or . . . the success of the tort claim is dependent on the success of the breach of contract claim." <u>Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP</u>, 746 S.E.2d 568, 577 (W. Va. 2013).

The Sterns' trespass and conversion claims are dependent upon a finding that the defendants have breached the subject leases and lack contractual authority to unitize the Sterns' properties and to

11

produce gas from their property through a well on a neighboring tract. The defendants' alleged liability arises solely out of the parties' performance of the subject leases' terms. While the defendants' obligations to not trespass and convert the Sterns' gas arise out of common law, the subject leases grant the defendants title to the Sterns' gas and to conduct operations to produce that gas. Thus, the defendants are liable for trespass and conversion only if they have also breached the terms of the subject leases. All liability must stem from that breach, and the Sterns' trespass and conversion claims seek only to duplicate the same breaches of the same contractual duties. Thus, the Sterns' trespass and conversion claims are barred under the gist of the action doctrine. Further, even if the Sterns' claims are not barred, the Sterns fail to state claims for trespass and conversion because the defendants had contractual authority to unitize the subject leases and to produce gas from the Sterns' properties as part of the Ray Baker Unit. Accordingly, the defendants' motions to dismiss are granted as to Counts III and IV.

## IV. Conclusion

For the foregoing reasons, the defendants' motions to dismiss (ECF Nos. 82, 84) are GRANTED IN PART AND DENIED IN PART. Counts II, III, and IV are DISMISSED, and Counts V, VI, and VII remain.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      December 5, 2016

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE
